UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

**LELAND FOSTER**,

    Plaintiff,

v.

**PARKLAND ACQUISITION, LLC**, a Michigan for profit company

    Defendant.

Case No. 1:23-cv-130

Judge:

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Plaintiff, **LELAND FOSTER**, individually, by and through the undersigned counsel, Owen B. Dunn, Jr., hereby files this Complaint against Defendant **PARKLAND ACQUISITION, LLC** for injunctive relief, damages, attorneys' fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA"), alleging as follows:

### JURISDICTION AND VENUE

1. This action is brought by the Plaintiff, **Leland Foster**, individually, and on behalf of individuals similarly situated, pursuant to the enforcement provision of the American with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12188(a), against the Defendant as delineated herein.

2. The Court has jurisdiction pursuant to the following statutes: 28 U.S.C. § 1331, which governs actions that arise from the Defendant's violations of Title III of the ADA, 42 U.S.C. § 12181, *et seq.*; 28 U.S.C. § 1331, which gives the District Courts original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States; 28 U.S.C. § 1343(3) and (4), which gives District Courts jurisdiction over

      actions to secure civil rights extended by the United States government; and 28 U.S.C. § 1367, as Count II utilizes the same core of operative facts as Count I, and is therefore subject to supplemental jurisdiction.

3. Venue is proper in the Western District of Michigan as venue lies in the judicial district of the property *situs*. The Defendant's property and operations complained of by Plaintiff are located in this judicial district, where the business of public accommodation is conducted, including the acts complained of herein.

## PARTIES

4. Plaintiff, **LELAND FOSTER** ("Plaintiff" or "Mr. Foster") is a Fulton County, Ohio resident, is *sui juris*, and qualifies as an individual with disability as defined by the ADA, 42 U.S.C. § 12102(2), 28 C.F.R. 36.104.

5. The Defendant Parkland Acquisition, LLC owns and/or operates the Shoreline Inn & Conference Center, which is a hotel located at 750 Terrace Point Rd. Muskegon, MI 49440 in Muskegon County.

6. Upon information and belief, the hotel owned and operated by the Defendant was originally built by the Defendant or its predecessor commencing in 2000 and granted permits for occupancy in 2002 and is non-compliant with the remedial provisions of the ADA for newly designed and constructed or altered facilities. Full compliance with the implementing regulations of the ADA is required for this hotel unless it would be structurally impracticable in which case compliance is required to the extent that it is not structurally impracticable.

7. Upon information and belief, the facility owned or operated by the Defendant Parkland Acquisition, LLC is non-compliant with the remedial provisions of the ADA. As

    Defendant either owns, leases, lease to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104, Defendant is responsible for complying with the obligations of the ADA. Defendant's hotel is a place of public accommodation. Defendant's property fails to comply with the ADA and its regulations, as also described further herein.

8. Mr. Foster is an individual diagnosed with cerebral palsy and permanently uses a wheelchair for mobility. Plaintiff has difficulty grasping with his hands also as a result of his disability. As such, he is substantially limited in performing one or more major life activities, including but not limited to, standing and walking, as defined by the ADA and its regulations thereto.

9. Mr. Foster is an avid on and off-road hand cyclist and frequents the state parks of Michigan. Western Michigan's state parks, including Muskegon and Ludington State Parks, offer some of the best accessibility features in the region with widened pathways, accessible park facilities and track chairs for beach access making them a regular summer destination for Mr. Foster.

10. While in the Muskegon area, Mr. Foster frequents the parks, restaurants, shopping centers, businesses and establishments of Muskegon, MI and the surrounding area, including the Defendant's property that form the subject of this complaint.

11. On July 27-28, 2022, Plaintiff patronized the Defendant's property as an overnight guest and he plans to return to the property to avail himself of the goods and services offered to the public at the property. The Plaintiff has encountered architectural barriers at the subject's property. The barriers to access at the property have endangered his safety and protected access to Defendant's place of public accommodation.

12. Completely independent of the personal desire to have access to this place of public accommodation free of illegal barriers to access, Plaintiff also acts as a "tester" for the purpose of discovering, encountering, and engaging discrimination against the disabled in public accommodations. When acting as a "tester," Plaintiff employs a routine practice. Plaintiff personally visits the public accommodation; engages all of the barriers to access, or at least all of those that Plaintiff is able to access; and tests all of those barriers to access to determine whether and the extent to which they are illegal barriers to access; proceeds with legal action to enjoin such discrimination; and subsequently returns to the premises to verify its compliance or non-compliance with the ADA and to otherwise use the public accommodation as members of the able-bodied community are able to do. Independent of other visits, Plaintiff also intends to visit the premises annually to verify its compliance or non-compliance with the ADA, and its maintenance of the accessible features of the premises. In this instance, Plaintiff, in Plaintiff's individual capacity and as a "tester," visited the Facility, encountered barriers to access at the Facility, and engaged and tested those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access and the ADA violations set forth herein.

13. Plaintiff has a realistic, credible, existing, and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations contained in this complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant. Plaintiff desires to visit the Defendant's place of business again on future occasions, not only to avail himself of the goods and services

available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the hotel and its amenities without fear of discrimination.

14. The Defendant has discriminated against the individual Plaintiff by denying him access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 *et seq*.

15. The Defendant has discriminated and are continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, *inter alia*, have accessible facilities by January 26, 1992 (or January 26, 1993, if Defendants have 10 or fewer employees and gross receipts of $500,000 or less).

16. A preliminary inspection of the Shoreline Inn & Conference Center, including its facilities, has shown that many violations of the ADA exist.  These violations include, but are not limited to:

**Parking & Accessible Route**

A. The route from designated accessible parking spaces to access the hotel's lobby entry contains excessive slope and cross slopes, in violation of the ADA whose remedy is strictly required or at minimum is readily achievable.

B. The hotel passenger loading area is not marked with a required vehicle pull up space and access aisle, in violation of the ADA whose remedy is strictly required or at minimum is readily achievable.

C. In the parking lot, signs required for identifying designated accessible parking spaces are missing, in violation of the ADA section 703.7.2.1 of the 2010 Standards and 1991

        ADAAG section 4.6.4, whose remedy is strictly required or at minimum is readily achievable.

D.        In the parking lot there are no Van Accessible spaces or signs identifying "van accessible" parking are missing the sign identifying it as a 'van accessible' stall, in violation of the ADA section 208.2.4 and 502.6 of the 2010 Standards and 1991 ADAAG section 4.6.4, whose remedy is strictly required or at minimum is readily achievable.

E.        In the parking lot all designated accessible parking spaces entirely lack access aisles, in violation of the ADA section 502.3.3 of the 2010 Standards and 1991 ADAAG section 4.6.3, whose remedy is strictly required or at minimum is readily achievable.

F.        In a parking lot, accessible parking spaces do not connect to an accessible route, in violation of the ADA section 502.3 of the 2010 Standards and 1991 ADAAG section 4.6.3, whose remedy is strictly required or at minimum is readily achievable.

G.        Ground surfaces located on the accessible route have changes in elevation in excess of ¼ inch, in violation of the ADA and section 303.2 of the 2010 Standards and 1991 ADAAG section 4.5.2, whose remedy is strictly required or at minimum is readily achievable.

H.        Ground surfaces located on the accessible route have cracks in excess of ½ inch, in violation of the ADA and section 302.3 of the 2010 Standards and 1991 ADAAG section 4.5.4, whose remedy is strictly required or at minimum is readily achievable.

**Fitness Center**

I. In the Fitness Center, the door exceeds the maximum allowable opening force, in violation of the ADA and section 404.2.9 of the 2010 Standards and 1991 ADAAG section 4.13.11 whose remedy is readily achievable.

J. In the Fitness Center, the route of travel does not provide a minimum width of 36 inches, in violation of the ADA section 403.5.1 of the 2010 Standards and 1991 ADAAG section 4.3.3 whose remedy is readily achievable.

K. In the Fitness Center the exercise machines and equipment do not have a clear floor space complying with 305 positioned for transfer or for use by an individual seated in a wheelchair, in violation of the ADA section 1004.1 of the 2010 Standards whose remedy is readily achievable.

**Access to Goods and Services**

L. At the front desk, the registration transaction counter is too high and does not have required lowered, in violation of the ADA section 904.4.1/904.4.2 of the 2010 Standards and 1991 ADAAG section: 7.2(1), whose remedy is strictly required or at minimum is readily achievable.

M. In the Lake Effect Bistro bar area, there are no accessible seating or standing dining surfaces provided, in violation of the ADA section 226.1 of the 2010 Standards and 1991 ADAAG section 5.1 whose remedy is strictly required or at minimum is readily achievable.

N. In the Lake Effect Bistro bar area there is no accessible transaction counter in violation of the ADA whose remedy is strictly required or at minimum is readily achievable.

O. In the Lake House outdoor bar and indoor bar areas, there are no accessible seating or standing dining surfaces provided, in violation of the ADA section 226.1 of the 2010 Standards and 1991 ADAAG section 5.1 whose remedy is strictly required or at minimum is readily achievable.

**Lobby Restrooms**

P. At the Men's public restroom entry, the sign providing information is located out of compliance, in violation of the ADA section 703.4.2 of the 2010 Standards and 1991 AGAAG section 4.30.6 whose remedy is strictly required or at minimum is readily achievable.

Q. In the Men's restroom, the water and drainpipes under the lavatory are not adequately insulated in violation of the ADA section 606.5 of the 2010 Standards and 1991 ADAAG section 4.19.4, whose remedy is strictly required or at minimum is readily achievable.

R. In the Men's restroom, the height of the mirror to the reflective surface is in excess of 40 inches above the finish floor, in violation of the ADA section 603.3 of the 2010 Standards and 1991 ADAAG section 4.19.6, whose remedy is strictly required or at minimum is readily achievable.

S. In the men's restroom the accessible toilet compartment stall lacks required door pulls on both sides, in violation of the ADA whose remedy is strictly required or at minimum is readily achievable.

T. Upon information and belief, there are similar barriers to handicap access in the lobby women's restroom, whose remedy is strictly required or at minimum is readily achievable.

**Guest Room #209**

U. In guest room #209, the sign providing information is located out of compliance, in violation of the ADA section 703.4.2 of the 2010 Standards and 1991 AGAAG section 4.30.6 whose remedy is strictly required or at minimum is readily achievable.

V. In guest room #209, the door hardware to the bathroom are not accessible because they require tight grasping, pinching, or twisting of the wrist, as door the door locking mechanism, in violation of the ADA section 309.4 of the 2010 Standards and 1991 ADAAG section: 4.27.4 whose remedy is strictly required or at minimum is readily achievable.

W. In the guest room #209, the existing shower is not nearly either a compliant roll-in shower or transfer shower.  Barriers to access include non-complaint width and depth of the shower if considered a transfer shower, non-compliant or missing grab bars, excess threshold if considered a roll-in shower, faucet controls not located on back wall adjacent to the permanent fixed seat if considered a roll-in shower, faucet controls that require tight clasping to operate, in violation of the ADA sections 608.2.1, 608.2.2, 608.3.1 and others of the 2010 Standards whose remedy is strictly required or at minimum is readily achievable.

X. In the guest room #209, the flush controls are not mounted on the open side of the toilet unit, in violation of the ADA section 604.9.5 of the 2010 Standards, whose remedy is strictly required or at minimum is readily achievable.

Y. In the guest room #209, the toilet paper is not mounted 7 inches minimum to 9 inches maximum from the front of the toilet, in violation of the ADA section 604.9.6 of the 2010 Standards, whose remedy is strictly required or at minimum is readily achievable.

Z. In guest room #209, the towel rack is too high and out of the maximum height reach range, in violation of the ADA and section 308.3.1 of the 2010 Standards, whose remedy is strictly required or at minimum is readily achievable.

AA. In guest room #209, the restroom door lock is not accessible because it requires tight grasping, pinching, or twisting of the wrist, in violation of the ADA section 309.4 of the 2010 Standards and 1991 ADAAG section: 4.27.4, whose remedy is strictly required or at minimum is readily achievable.

BB. In guest room #209, the closet rod, shelf and clothing iron are located too high and outside of the maximum height reach range, in violation of the ADA and section 308.3.1 of the 2010 Standards, whose remedy is strictly required or at minimum is readily achievable.

CC. In guest room #209, the latch on the exterior window/patio type doors is too high and out of the maximum height reach range, in violation of the ADA and section 308.3.1 of the 2010 Standards, whose remedy is strictly required or at minimum is readily achievable.

DD. In guest room #209, the drape wands are too high and out of the maximum height reach range and require tight clasping to operate, in violation of the ADA and section 308.3.1 of the 2010 Standards, whose remedy is strictly required or at minimum is readily achievable.

EE. The kitchenette sink does not have required knee and toe clearances, in violation of the ADA whose remedy is strictly required or at minimum is readily achievable.

**<u>Mobility Accessible Guestrooms Generally</u>**

FF. The hotel's designated accessible guestrooms are not disbursed among the various classes of guestrooms, whereas the property offers standard guest rooms with King beds and 2 Queen Beds, One Bedroom Suites, guest rooms with lake views and marina views, suites with balcony, suites with a whirlpool bathtub, suites with queen bed plus a king bed, and multiple Penthouses.  These offers varying square footage and amenities available only to able bodied guests. These are offered in differing rate categories.  However, guests who require accessible accommodations are restricted to a standard room and therefore fewer room classes and guestroom amenities, whereas able-bodied patrons and guests have access to reserve and stay at the full range of room classes. This is in violation of the ADA and its remedy is strictly required or at minimum is readily achievable.

GG. Upon information and belief the Shoreline Inn has a legally insufficient total number of hotel guestrooms fitted with mobility accessible features. Whereas, for a property with 140 guestrooms such as this Shoreline Inn, there must be a minimum of 5 mobility accessible guestrooms without a roll-in shower and a minimum of 2 of mobility accessible guestrooms with a roll-in shower, totaling 7 designated mobility accessible guestrooms.

HH. Upon information and belief, Leland Foster believes substantially similar barriers to handicap access for the mobility impaired exist in all guestrooms that are designated as mobility accessible guestrooms throughout the hotel (not just room 209). Including the

other shower fitted mobility accessible guestrooms and bathtub or transfer shower fitted mobility accessible guestrooms.

**Indoor and Outdoor Pools**

II. In the indoor pool/spa area neither of the two spa offered have at least one accessible means of entry, in violation of the ADA section 242.4 of the 2010 Standards whose remedy is strictly required.

JJ. In the indoor pool area, there is no accessible seating at the tables provided, in violation of the ADA section 226.1 of the 2010 Standards and 1991 ADAAG section 5.1, whose remedy is strictly required.

KK. At the outdoor pool there are not two accessible means of entry including no adaptive pool lift, in violation of the ADA section 242.2 of the 2010 Standards whose remedy is strictly required.

LL. At the outdoor pool the men and women's restroom facilities are not handicap accessible.

**Policies and Procedures**

MM. The Defendant lacks or has inadequate defined policies and procedures for the assistance of disabled patrons, including a policy of maintenance of its accessible features, in violation of the ADA whose remedy is required.

NN. The Defendant's inadequate procedures for the benefit of its patrons with disability extend to its failure to conduct a self-survey of its facilities and amenities that has resulted in discriminatory conduct toward Leland Foster.

OO. The Defendant's inadequate policies and procedures include an absence of emergency evacuation plans of this ten-story building hotel for the Defendant's guests with varying

types of disabilities who may require an added duty of care and pre-planning. As such, guests with mobility impairments including Leland Foster, struggle to address the existing barriers to accessibility on the property and suffer additional risk in the event of an emergency and proper emergency evacuation plans are required.

17. The discriminatory violations described in Paragraph 16 by the Defendant, Parkland Acquisition, LLC, are not an exclusive list of the Defendant's ADA violations. Plaintiff requires further inspection of the Defendant's place of public accommodation and facilities in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access. The Plaintiff has been denied access to Defendant's accommodations; benefit of services; activities; and has otherwise been discriminated against and damaged by the Defendant, as set forth above. The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein. In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendant's place of public accommodation, facilities and operations in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITES ACT

18. Plaintiff restates the allegations of ¶¶1-17 as if fully rewritten here.

19. The hotel at issue, as owned and operated by Parkland Acquisition, LLC, constitutes a public accommodation and service establishment, and as such, must be, but is not, in compliance with the Americans with Disabilities Act ("ADA") or Americans with Disabilities Act Accessibility Guidelines ("ADAAG").

20. Plaintiff was unlawfully denied full and equal enjoyment of the goods, services, facilities, privileges, and advantages of the property on the basis of disability due to Defendant's failure to comply with Title III of the Americans with Disabilities Act and its accompanying regulations, as prohibited by 42 U.S.C. § 12182, *et seq.* Defendant will continue to discriminate against Plaintiff and others with disabilities unless and until Defendant is compelled to remove all physical barriers that exist at the facility, including those specifically set forth herein, and make the facility accessible to and usable by persons with disabilities, including Plaintiff.

21. The Plaintiff, and others similarly situated, is presently without adequate remedy at law and is damaged by irreparable harm. Plaintiff reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant is required to remove the physical barriers, dangerous conditions, and ADA violations that exist at the Facility, including those set forth herein.

22. Pursuant to 42 U.S.C. §12187 and §12188, Plaintiff requests that the Court issue an injunction requiring Defendant to come into full compliance with the implementing regulations of the ADA as is required for this hotel unless it would be structurally impracticable or at minimum to make such readily achievable alterations as are legally required to provide full and equal enjoyment of the goods, services, facilities, privileges, and advantages on its property to disabled persons. In connection with that relief, Plaintiff request reasonable attorney's fees and costs of maintaining this action.

### COUNT II
### VIOLATION OF MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT
### M.C.L. § 37.1301 *et seq.*

23. Plaintiff restates the allegations of ¶¶1-22 as if fully rewritten here.

24. Parkland Acquisition, LLC operates a "place[s] of public accommodation pursuant to M.C.L §37.1301(a).

25. Defendants have committed an unlawful act pursuant to M.C.L §37.1302(a) by denying Plaintiff the full enjoyment of its goods, services, accommodations, advantages, facilities, or privileges. Whereas, Defendant has failed to undertake the barrier removal steps necessary to provide Mr. Foster, and others with mobility impairments, safe and accessible means of patronizing the businesses on the property. Or offering the same amenities as the Defendant offers for its able bodied guest and intentionally excludes the plaintiff and others.

**WHEREFORE**, Plaintiff demands,

For **COUNT I**, an injunction requiring Defendant to make all readily achievable alterations and institute policies and procedures to allow full and equal enjoyment of the goods, services, facilities, privileges, and advantages to disabled persons, and the reasonable attorneys' fees and costs of maintaining this action; and,

For **COUNT II**, compensatory and exemplary damages, attorneys' fees and costs, in an amount to be determined at trial, but in any event not less than $25,000, as well as issuance of an injunction requiring Defendant to allow full and equal enjoyment of the goods, services, facilities, privileges, and advantages to disabled persons.

Respectfully Submitted,

*Counsel for Plaintiff:*

/s/ Owen B Dunn Jr.
Owen B. Dunn, Jr., Esq. (p66315)
Law Offices of Owen Dunn, Jr.
The Ottawa Hills Shopping Center
4334 W. Central Ave., Suite 222
Toledo, OH 43615

(419) 241-9661 – Phone  
Monroe, MI (734) 240-0848  
(419) 241-9737 - Facsimile  
Email: dunnlawoffice@sbcglobal.net